UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

MELISSA CLUTTER-JOHNSON,

    Plaintiff,

v.                              Civil Action No. 1:16-04041

UNITED STATES OF AMERICA,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This is a medical malpractice case filed against the United States by Plaintiff Melissa Clutter-Johnson under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. Plaintiff's case falls into two parts: First, she claims that doctors, for whom the United States was responsible, negligently inserted a Mirena® intrauterine device ("IUD") on September 29, 2009, that resulted in her becoming pregnant with twins in September 2012. The parties agree that this is a claim for wrongful pregnancy as opposed to wrongful birth. Plaintiff also maintains that she was damaged by the failure of her doctors to locate and remove the IUD during her delivery by Cesarean section of twin daughters on May 10, 2013, and during further medical treatment and surgeries that resulted from failure to remove the IUD.

The United States has moved for dismissal of the wrongful pregnancy count under Rule 12 of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment under Rule 56.  The United States contends that Plaintiff's wrongful pregnancy claim is barred by the applicable statute of limitations, 28 U.S.C. § 2401(b).  The United States agrees that the remaining claim is not time-barred.

For the reasons discussed below, the motion for summary judgment is granted with regard to the claim for wrongful birth.

## II.  FACTUAL BACKGROUND

Plaintiff, Melissa Clutter-Johnson, had a Mirena® IUD implanted[1] on September 28, 2009 as a means of birth control. See Doc. No. 1.  The procedure took place at Community Health Systems, Inc., d/b/a Access Health-OB-GYN ("Access Health"), a federally-funded medical facility in Beckley, West Virginia. Id.  When properly placed, the IUD prevents pregnancy for five years.  According to Plaintiff, a nurse twice attempted to insert the IUD.  After the nurse was unsuccessful, Dr. Marcia A. Khalil and/or another nurse then inserted the IUD.  Id.

In September 2012, three years after the placement of the IUD, Plaintiff became pregnant with twin daughters.  Id.  She

---

[1] In this opinion, the court interchangeably uses the verbs "implant" and "insert" and their various corresponding tenses.

returned to Access Health on October 24, 2012, where Dr. Gina Jereza-Harris attempted to remove the IUD.  Dr. Jereza-Harris was unsuccessful and informed Plaintiff that if the IUD were not removed, then Plaintiff faced a 50% risk of pregnancy loss in the second trimester.  Id.  On November 14, 2012, Plaintiff received an MRI at Webster County Memorial Hospital and had a consultation with Dr. David Chaffin at Cabell Huntington Hospital on Dr. Jereza-Harris' referral.  Id.  Dr. Chaffin determined that the IUD was not embedded and, as a result, might become dislodged on its own.  Id.  Specifically, Dr. Chaffin's consultation notes from the November 14, 2012, appointment contain the following statement:

> The location of the IUD entirely within the
> cervical canal, associated with the extreme
> difficulty with attempts at removal
> (breaking strings twice) leads me to
> conclude that the IUD was placed ONLY within
> the canal initially and that the arms of the
> IUD had no opportunity to extend.  Now,
> attempts at removal result[] in the arms
> extending and preventing removal.  However,
> this also suggests that the IUD has not
> become embedded and if cervical dilation
> occurs the IUD may actually fall out.

See Doc. No. 1.  The remainder of Plaintiff's pregnancy was uneventful.  Id.  She gave birth to twin girls by Cesarean section on May 10, 2013.  Id.  Drs. Khalil and Jereza-Harris performed the cesarean section and again attempted to remove the

3

IUD but were unable to do so.  Id.  A few days after birth, it became apparent that one of the twin children, G.E.J., suffers from congenital defects.  Id.  According to Plaintiff, G.E.J. has Duane Syndrome, congenital scoliosis, ventricular septal defect, and cranial nerve defect.  Id.  She has had and will continue to require numerous surgeries and other medical treatment.  Id.  Her sister, I.A.J., appears to be a healthy child without birth defects.  Id.

Plaintiff herself has also undergone additional medical treatment related to the IUD.  Id.  A number of other doctors attempted to remove the IUD but, like the doctors at Access Health, were either unable to locate or to extricate the IUD. Id.  In December 2014, a year and a half after Plaintiff gave birth to her twin daughters, she underwent surgery at Princeton Community Hospital and the IUD was removed successfully.  Id. Plaintiff filed a claim before the appropriate administrator, the United States Department of Health and Human Services ("HHS"), on May 8, 2015, see Doc. No. 8, and thereby invoked her administrative remedies.  Her administrative claim was denied on December 28, 2015.  This civil action followed on April 28, 2016.

### III. APPLICABLE LEGAL STANDARDS

#### A. Motion to Dismiss For Failure to State a Claim

"The purpose of a Rule 12(b)(6) motion is to test the [legal] sufficiency of a complaint; importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999) (citations and internal quotation marks omitted).  A Rule 12(b)(6) defense asserts that even if all the factual allegations in a complaint are true, they still remain insufficient to establish a cause of action.  This court is also mindful that "[w]hether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract."  Jones v. Bock, 549 U.S. 199, 215 (2007).

Related to this, Federal Rule of Civil Procedure 8(a)(2) requires that "a pleading . . . contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, 556 U.S. 662, 677—78 (2009) (citing Fed. R. Civ. P. 8(a)(2)).  The purpose of Rule 8(a)(2) is to ensure that "the defendant [receives] fair notice of what the . . . claim is and the grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47 (1957).  A plaintiff must allege "'enough facts to state a claim to relief that is plausible on

5

its face'" and "'raise a right to relief above the speculative
level.'" Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599,
615 n.26 (4th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly,
550 U.S. 544, 555 (2007)).

     The United States Supreme Court has maintained that
"[w]hile a complaint . . . does not need detailed factual
allegations, . . . a plaintiff's obligation to provide the
grounds of his entitle[ment] to relief requires more than labels
and conclusions, and a formulaic recitation of the elements of a
cause of action will not do." Twombly, 550 U.S. at 555
(citations and internal quotation marks omitted).  The court
need not "accept as true unwarranted inferences, unreasonable
conclusions, or arguments." E. Shore Mkts., Inc. v. J.D.
Assocs. Ltd P'ship, 213 F.3d 175, 180 (4th Cir. 2000).  Courts
must also take care to avoid confusing the veracity or even
accuracy underlying the allegations that a plaintiff has leveled
against a defendant with the allegations' likelihood of success.
While "the pleading must contain something more . . . than . . .
a statement of facts that merely creates a suspicion [of] a
legally cognizable right of action," 5 C. WRIGHT & A. MILLER, FEDERAL
PRACTICE AND PROCEDURE § 1216, pp. 235–236 (3d ed. 2004),
"assum[ing]" of course "that all the allegations in the
complaint are true (even if doubtful in fact)," Twombly, 550

U.S. at 555, it is also the case that "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." Neitzke v. Williams, 490 U.S. 319, 327 (1989).  Therefore, courts must allow a well-pleaded complaint to proceed even if it is obvious "that a recovery is very remote and unlikely." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

### B. Summary Judgment

Rule 12(d) of the Federal Rules of Civil Procedure requires the court to treat a motion to dismiss as one for summary judgment when matters outside the pleadings are presented to and not excluded by the court.  Here, Plaintiff has submitted an affidavit that the court has considered.  Therefore, Defendant's motion to dismiss must be treated as a motion for summary judgment.

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment for

the movant is unavailable.  <u>Anderson</u>, 477 U.S. at 250; <u>see also</u>
<u>Pulliam Inv. Co. v. Cameo Properties</u>, 810 F.2d 1282, 1286 (4th
Cir. 1987); <u>Morrison v. Nissan Motor Co.</u>, 601 F.2d 139, 141 (4th
Cir. 1987).  The movant bears the burden of showing that there
is no genuine issue as to any material fact and that he is
entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P.
56(c); <u>Catawba Indian Tribe of South Carolina v. South Carolina</u>,
978 F.2d 1334, 1339 (4th Cir. 1992), <u>cert. denied</u>, 507 U.S. 972
(1993).

When adjudicating a summary judgment motion, the district
court must construe the facts alleged in the light most
favorable to the party <u>opposing</u> the motion. <u>See</u> <u>United States v.</u>
<u>Diebold, Inc.</u>, 369 U.S. 654, 655 (1962); <u>Gill v. Rollins</u>
<u>Protective Servs. Co.</u>, 773 F.2d 592, 595 (4th Cir. 1985).
Furthermore, "[a] party who bears the burden of proof on a
particular claim must factually support each element of his or
her claim." <u>Weakland v. United States</u>, 2005 U.S. Dist. LEXIS
2404, *9 (D. Md. Feb. 8, 2005).  "[A] complete failure of proof
concerning an essential element . . . necessarily renders all
other facts immaterial." <u>Celotex Corp.</u>, 477 U.S. at 323.
Therefore, with respect to the issues on which the nonmovant
bears the burden of proof, it remains the nonmovant's
"responsibility to confront the motion for summary judgment with

8

an affidavit or other similar evidence in order to show the existence of a genuine issue for trial." Weakland, 2005 U.S. Dist. LEXIS at *10; see also Anderson, 477 U.S. at 256; Celotex Corp., 477 U.S. at 324.

That said, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." Detrick v. Panalpina, Inc., 108 F.3d 529, 536 (4th Cir. 1997), cert. denied, 522 U.S. 810 (1997). The United States Supreme Court has asserted that there must exist "sufficient evidence favoring the [nonmovant] for a jury to return a verdict for that party." Anderson, 477 U.S. at 249-50 (citations omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. (citations omitted).

## C. Federal Tort Claims Act (FTCA) Defenses

The FTCA waives the United States' sovereign immunity and allows suits against the federal sovereign for personal injuries caused by government employees acting within the scope of their employment. See 28 U.S.C. § 1346(b), § 2671, et seq. The United States correctly observes that the FTCA enables plaintiffs "to recover monetary awards from the United States for injury, property loss, or death 'caused by the negligent or wrongful act or omission of any employee of the Government while

acting within the scope . . . of employment.'"  Doc. No. 5
(quoting 28 U.S.C. § 1346(b).  The United States may be held
liable only if its alleged conduct is negligent "in accordance
with the law of the place where the act or omission occurred."
Id.  Consequently, it is state law that governs liability under
the FTCA.  See Myrick v. United States, 723 F.2d 1158, 1159 (4th
Cir. 1983) ("In actions brought under the FTCA, federal courts
apply the substantive law of the state in which the act or
omission giving rise to the action occurred."); Rayonier Inc. v.
United States, 352 U.S. 315, 321 (1957) ("[FTCA] provisions,
given their plain natural meaning, make the United States liable
to petitioners for [certain conduct] if, as alleged in the
complaints, [state] law" of the jurisdiction where the act or
omission took place "would impose liability on private persons
or corporations under similar circumstances.").

(1)   Statute of Limitations

The FTCA contains a strict provision governing the
limitation of actions.  Once a tort claim arises from the
actions or omissions of the United States, a claimant has no
more than two years to present that claim in writing to the
appropriate federal agency.  See 28 U.S.C. § 2401(b) (stating
that claim is "forever barred" unless presented within two
years).  After the claimant has submitted a claim, the agency

10

normally has six months to reach a final disposition on the claim.  Should the agency deny the claim, then the claimant has six months to file suit in federal court.  See 28 U.S.C. § 2401(b).  If the administrative agency does not finally dispose of the claim within six months, the claimant is allowed to "deem[]" that failure to be a "final denial of the claim," and commence an FTCA suit.  28 U.S.C. § 2675(a).

(2)  Equitable Tolling as it Pertains to the FTCA

**(a)  The FTCA's Time Bars Have Been Held to be Nonjurisdictional.**

Over the dissent of four justices, the United States Supreme Court held just two Terms ago that the FTCA's timeliness requirements are not "jurisdictional"—viz., the FTCA is subject to equitable tolling.  See United States v. Wong, 135 S. Ct. 1625, 1638 (2015).  The FTCA's text notwithstanding, the Wong Court saw it fit to treat the United States as a private person in a material respect, and "treating the Government like a private person means (among other things) permitting equitable tolling."  Wong, 135 S. Ct. at 1638; see also John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 137 (2008) (citations and internal quotation marks omitted) ("[E]quitable tolling applicable to suits against private defendants should also apply to suits against the United States.").

11

### (b)  Equitable Tolling is a Limited Remedy that is Seldom Available.

Under Wong, only "when circumstances [so] warrant" is equitable tolling appropriate.  Wong, 135 S. Ct. at 1638. Because the FTCA's timeliness requirements are "nonjurisdictional and subject to equitable tolling," it is incumbent on "the [d]istrict [c]ourt to decide whether, on the facts of [a given] case, [that particular claimant] is entitled to equitable tolling."  Id.

Equitable tolling is fitting "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."  Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990).  However, "the principles of equitable tolling described above do not extend to what is at best a garden variety claim of excusable neglect."  Id.  In 2005, the United States Supreme Court elucidated the circumstances in which equitable tolling might be available; in doing so, the Court recognized a two-prong inquiry: "(1) that [the claimant] has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood

in [the claimant's] way."  <u>Pace v. DiGuglielmo</u>, 544 U.S. 408,
418 (2005).

**IV.  DISCUSSION**

**A.  <u>Plaintiff's Wrongful Pregnancy Claim is Time-Barred and
Equitable Tolling is Unavailable.</u>**

(1)  <u>A Time Bar Exists</u>

In <u>United States v. Kubrick</u>, 444 U.S. 111 (1979), the
United States Supreme Court addressed the issue of when a claim
for medical malpractice accrues under the FTCA.  There, a
veteran brought suit for a hearing loss allegedly caused by
medical malpractice in a Veterans Administration hospital.  In
April 1968, the veteran, Kubrick, was treated following surgery
with neomycin for an infection of the right femur.  About six
weeks after his discharge from the hospital, Kubrick noticed a
ringing in his ear and some loss of hearing.  In January 1969,
he was informed by one of his doctors that it was highly
possible that the neomycin caused the hearing loss.  Kubrick
filed a suit for medical malpractice under the FTCA and
recovered a judgment.  The trial court rejected an assertion by
the United States that Kubrick's claim was time-barred.  The
United States argued that Kubrick's claim accrued in January
1969, when he learned that his hearing loss had probably
resulted from the neomycin.  The lower court held that the
inception of the limitations period did not accrue until June of

13

1971 when Kubrick was specifically told by another doctor that the neomycin had caused the injury and should not have been administered.  The court of appeals affirmed.

The United States Supreme Court reversed the judgment for Kubrick and accepted the United States' argument that the cause was time-barred.  The court held that the statute of limitations under the FTCA begins to run when the claimant becomes aware of his injury and its probable cause.  He does not have to learn that his injury was negligently inflicted.  Knowledge of the injury and its probable cause, the Court reasoned, are enough to impose upon a claimant a duty to make inquiry, such as seeking his medical records, that will disclose whether or not his injuries have been negligently inflicted.  The Supreme Court concluded:

> We thus cannot hold that Congress intended
> that 'accrual' of a claim must await
> awareness by the plaintiff that his injury
> was negligently inflicted. A plaintiff such
> as Kubrick, armed with the facts about the
> harm done to him, can protect himself by
> seeking advice in the medical and legal
> community. To excuse him from promptly doing
> so by postponing the accrual of his claim
> would undermine the purpose of the
> limitations statute, which is to require the
> reasonably diligent presentation of tort
> claims against the Government.

444 U.S. at 123.  Our court of appeals followed Kubrick in Kerstetter v. United States, 57 F.3d 362 (4th Cir. 1995).  The

14

court held that the accrual of a claim in medical malpractice under the FTCA occurs when a plaintiff becomes aware—or would have become aware through the exercise of due diligence—both of the existence of the injury and its cause.  There, a husband and wife sought recovery on behalf of their minor child whose kidneys ceased to function during surgery.  The parents learned shortly after surgery that their child's kidneys had shut down and would never resume functioning.  At a later date, they were informed that the renal failure was due to damage to blood vessels that occurred during the surgery.  The Government moved for summary judgment on the ground that the FTCA's two-year statute of limitations had run before the plaintiffs filed their administrative claim, that is, when they learned the kidneys had shut down, not later when they learned of damage during surgery to blood vessels serving the kidneys.  The court agreed with the Government and said:

> [I]t should not make a difference when the
> plaintiff learns just what went wrong during
> a medical operation. So long as the
> plaintiff knows 'the critical fact' of 'who
> has inflicted the injury,' he can act to
> protect his rights by inquiring whether the
> injury was inflicted negligently.

57 F.3d at 365.[2]  Kerstetter was followed in Edwards v. United
States, 173 F.3d 424, 1999 WL 96138 (4th Cir. 1999) (unpublished
disposition).[3]  There, Plaintiff fractured both wrists on
February 6, 1990, while working at the U.S. Naval Base at
Guantanamo Bay.  She underwent surgery on August 29, 1990, at
the United States Naval Hospital in Portsmouth, Virginia.  She
had further surgeries in October 1990.  Plaintiff continued to
have problems and to seek medical advice.  On January 31, 1991,
she was told by a civilian doctor that, in his opinion, naval
doctors had negligently inserted a pin in her wrist that damaged
a tendon.  Edwards filed her administrative claim on January 29,
1993.  The Fourth Circuit held that Edwards knew about her
injury and the "critical facts" at the latest by November 1990.
The court rejected her argument that her claim did not accrue
until January 1991, when she was told the pin had been
negligently inserted.  See also Bohrer v. City Hospital, Inc.,
and United States, 681 F.Supp.2d 657 (N.D.W. Va. 2010); Trinkle
v. United States, 2012 WL 1963393 (D. Md. 2012).

---

[2] The court allowed a related claim by the father for
medical expenses and held the statute of limitations as to that
claim was tolled by the Soldiers' and Sailors' Civil Relief Act.

[3] The court is aware that citation of unpublished opinions
is disfavored.  The case under consideration is cited simply to
show the continued vitality of Kubrick and Kerstetter in the
Fourth Circuit.

Cases such as <u>Hughes v. United States</u>, 263 F.3d 272 (3rd Cir. 2001), can be distinguished from the case at bar, although at first glance they appear to be similar.  In <u>Hughes</u>, the plaintiff's legs and hands were amputated due to gangrene resulting from an allergic reaction to heparin, a blood-thinning agent.  He was not informed that, had the reaction been timely diagnosed, it could have been treated and arrested with anticoagulants.  Hughes successfully contended on appeal that the statute of limitations was not activated by his awareness of his injury.  Its inception did not accrue until he learned of its cause, the failure to treat his allergic reaction.  Hughes knew he had been injured, but believed the cause of the injury to be the fact that he was allergic to heparin; only later did he learn the actual cause to be the failure of medical personnel to treat in a timely manner his allergic reaction.  <u>See also</u> <u>Adkins v. United States</u>, 923 F.Supp.2d 853 (S.D.W. Va. 2013).

Here, by contrast, plaintiff's injury was her pregnancy; as soon as she learned she was pregnant she knew she had been injured.  At that time she also knew, or should have known, there were only two possible causes of her injury—a defective IUD or improper placement of the IUD by medical personnel.  Had she made inquiry of medical and legal personnel, as required by <u>Kubrick</u> and <u>Kerstetter</u>, the true cause of her injury would have

17

been revealed to her at a time well within the period of limitations.  Dr. Chaffin's notes from the November 14, 2012, appointment, the substance of which Plaintiff presumably could have obtained access to on inquiry, would have been sufficient to place her on notice that the IUD was improperly placed.

The harsh result this entails must be viewed in light of the policy behind the FTCA.  The Act is a, perhaps magnanimous, waiver of sovereign immunity by the federal government.  As the United States Supreme Court said in Kubrick:

> Section 2401(b), the limitations provision involved here, is the balance struck by Congress in the context of tort claims against the Government; and we are not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims. . . .
>
> We should also have in mind that the Act waives the immunity of the United States and that in construing the statute of limitations, which is a condition of that waiver, we should not take it upon ourselves to extend the waiver beyond that which Congress intended.

444 U.S. at 117—18.

(2)  Equitable Tolling is Unwarranted.

To establish equitable tolling, Plaintiff must satisfy a two-pronged standard: "(1) that [the claimant] has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [the claimant's] way."  Pace, 544 U.S. at

418.  Plaintiff gives no reason for the delay; nor does Plaintiff point to the existence of an "extraordinary circumstance" that may have impeded her timely filing.  Id.

Statutes of limitations have been tolled equitably in cases "where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action," Kokotis v. United States, 223 F.3d 275, 280—81 (4th Cir. 2000), as well as where "extraordinary circumstances beyond [a plaintiff's] control made it impossible to file the claims on time."  Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000) (internal citations omitted).

Conversely, statutes of limitations are not tolled equitably in cases where the plaintiff has failed, due to her own "blameless ignorance," to file her claim in a timely manner. Gould v. United States Dept. of Health and Human Svcs., 905 F.2d 738, 745-46 (4th Cir. 1990) ("The burden is on plaintiffs to show that due diligence was exercised and that critical information, reasonable investigation notwithstanding, was undiscoverable."); see also Schappacher v. United States, 475 F. Supp. 2d 749, 755-56 (S.D. Ohio 2007) (no equitable tolling available when plaintiff is ignorant of hospital's federal status since plaintiff did not inquire and there was no evidence the doctor affirmatively misled plaintiff).  Plaintiff has not

19

shown that any of the critical information pertaining to the
implantation was undiscoverable prior to her deadline since on
October 24, 2012, Plaintiff learned that she was pregnant.  At
best, Plaintiff's "blameless ignorance" pertains to her legal
rights and obligations in this context and not to her
pregnancy's timing in relation to the ticking of the clock.
Gould, 905 F.2d at 745-46.

Similarly, equitable tolling is unavailable in cases where
plaintiffs are given "erroneous legal advice," Butcher v. United
States, 2016 U.S. Dist. LEXIS 32134, *12 (S.D.W. Va. Mar. 14,
2016), or where "[t]he tort-feasor . . . [does] not
unequivocally announce its federal status" to the plaintiffs.
Id. at 13; see also Gould, 905 F.2d at 745 ("The statute of
limitations under the FTCA commences to run from the date of
accrual and does not wait until a plaintiff is aware that an
alleged tort-feasor is a federal employee."); Bohrer, 681 F.
Supp. 2d at 678—79 (no equitable tolling available where
plaintiff could have discovered federal status easily but did
not).  Accordingly, the court concludes that Plaintiff is not
entitled to equitable tolling with regard to the IUD's
insertion.

## B. Plaintiff's Allegation about IUD Removal is Not Time-Barred.

The United States agrees "that claims which arise from [Defendant's] alleged negligence occurring at the time of the C-section on May 10, 2013, presented in [P]laintiff's administrative claim on May 8, 2015, are not time barred." See Doc. No. 8.  Thus, the court concludes that Plaintiff's cause of action regarding the IUD removal is not time-barred.

### V.   CONCLUSION

With respect to Plaintiff's wrongful pregnancy claim, Defendant's Motion to Dismiss, treated as a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure, is **GRANTED with prejudice.**

The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED** this 13th day of March, 2017.

ENTER:

David A. Faber
Senior United States District Judge